IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:04-CR-141 |
| | ) | (VARLAN/GUYTON) |
| TOMMY LEE NORWOOD, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the Court on the defendant's Motion to Suppress Evidence [Doc. 13]. This motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on January 25, 2005. Assistant United States Attorney F.M. Hamilton III was present representing the government. Attorney Jonathan A. Moffatt was present representing the defendant, Tommy Lee Norwood. The defendant was also present. At the conclusion of the hearing, the defendant requested time to file a supplemental brief on issues raised during the hearing. The Court granted this request. The defendant filed a supplemental brief [Doc. 21] on February 4, 2005, and the government filed a response [Doc. 22] on February 17, 2005. The Court took the suppression motion and related filings under advisement on February 18, 2005.

The defendant, Tommy Lee Norwood ("Norwood") has been indicted [Doc.1] on a two-count indictment, alleging that the defendant is a felon and was in possession of a firearm and ammunition on January 2, 2002. Norwood has moved to suppress [Docs. 13, 17, and 21] all items of evidence seized during the January 2, 2002 stop of his car, alleging that:

(1) The officer lacked probable cause to stop him for a non-functioning license-plate lamp because his license plate was properly illuminated, and

(2) The local ordinance requiring that rear license plates be illuminated is unconstitutional.

The government responds [Docs. 15, 18, and 22] that the officer had reasonable suspicion to stop the defendant for violation of a local ordinance requiring that the rear license plate be illuminated and that the officer was justified in relying on this ordinance, which had not been invalidated prior to the stop and which was not "grossly and flagrantly unconstitutional."

# I. FACTS

The only witness who testified at the hearing was Officer Anthony Barnes ("Barnes"), an officer with the Knoxville Police Department ("KPD"). Barnes currently holds the rank of Patrol Officer I, the same rank which he held in January 2002. On January 2, 2002, Barnes was working the midwatch shift in the east district. This is a shift which runs from 6:00 p.m. to 2:00 a.m. On that date, Barnes testified that he was doing crime suppression in the Burlington community.

Barnes testified that he pulled behind a blue Ford Escort which was traveling in the same direction. He said that he decided to stop the vehicle, because he observed that the vehicle did not have a rear tag light illuminating the license plate. According to Barnes, this was a violation of Knoxville City Code Ordinance 17-379(c).

Barnes further testified that his in-car video device was working and that the encounter with the Ford Escort was recorded. He identified the driver of the Ford Escort as the defendant. The videotape from the in-car video device was marked as Exhibit 1 and received into evidence. Barnes testified that there was no audio on the videotape, for unknown reasons. Barnes further testified that

2

he viewed the videotape on January 19, 2005, and initialed it on that date.

Barnes then played the videotape to support his testimony that the tag light was not functioning on the defendant's vehicle. Directing the Court's attention to the videotape, Barnes testified that when his patrol car was at a distance of less than fifty (50) feet from the back of the subject vehicle, he could see no tag light.

Barnes further testified that he pulled the defendant's car over. The videotape shows that after stopping his car, the defendant attempted to exit his vehicle. Barnes, however, told the defendant to stay in the car. Barnes testified that he then noticed that there were three people in the car, and he called for back up.

Barnes then asked the defendant to exit the vehicle and step back to Barnes' vehicle. Barnes asked the defendant for his driver's license. According to Barnes, the defendant showed his license identification to Barnes, but the license said "ID only. DUI Offender." Based on this information, Barnes testified that he knew that the defendant's license had been revoked for DUI. At that time, the other KPD officers arrived.

Barnes testified that he then told the defendant to put his hands on the hood of the vehicle. Barnes said that the defendant was under arrest at that point. Barnes patted down the defendant and recovered a handgun magazine from the defendant's coat pocket. Barnes testified that he handcuffed the defendant immediately for officer safety. Barnes testified that he then asked the defendant, "Where is the gun?". Barnes testified that he asked this question for the safety of the two assisting, or backup, KPD officers who were approaching the Escort, which still contained two occupants. According to Barnes, the defendant said that the gun was in the glove compartment of the vehicle. At that point, Barnes testified that the two assisting KPD officers conducted a felony

3

stop and removed the two occupants of the defendant's car from the vehicle. The officers had their guns drawn.

Barnes testified that this occurred at or near the intersection of Catalpa Avenue and Dickson Street, at approximately 1:00 a.m. Barnes said that these are public streets in the City of Knoxville. Barnes further testified that he cited the defendant for having no tag light, for improper vehicle registration (licenses registered to another car), and for having no seat belt. Barnes testified that the defendant refused to sign the citations. Barnes stated that because the defendant refused to sign the citations, Barnes filed state charges against the defendant for these infractions.

On cross-examination, Barnes testified that he was engaged in doing general patrol and crime suppression in the Burlington area at the time of this incident. He testified that he was stopping cars for traffic violations and investigating crimes. Barnes testified that this area has a history of drug crimes.

Barnes testified that he also saw the subject videotape, Exhibit 1, sometime in 2003. He testified that on the night in question, he did not recall seeing the defendant's vehicle parked. With specific reference to the videotape at time mark 01:02:22 a.m., Barnes testified that he could see the rear license plate and that he possibly was more than fifty (50) feet away from the vehicle at this point. At time mark 01:02:32 a.m. of the videotape, Barnes testified that his headlights may have been reflecting on the rear license plate, and further, that there was some reflection on the rear license plate as the defendant's vehicle turned left.

Barnes testified that he went to a Judicial Commissioner on the night in question and that the Judicial Commissioner read Tenn. Code Ann. § 55-9-402, and cited that section as a basis for the misdemeanor warrant for no tag light. Barnes testified that it was his understanding that Tenn. Code

4

Ann. § 55-9-402 is "parallel" to the City Code Ordinance requiring a tag light. Barnes testified that he did not charge the defendant with violating the City Code Ordinance, because he charged the defendant with the state statute violation.

On re-direct examination, the Affidavit of Complaint by Barnes on this matter was marked as Exhibit 2 and received into evidence. Barnes testified again that it was standard operating procedure to charge with state charges, if a defendant refused to sign the citation for violation of a city ordinance.

With regard to the present matter, Barnes testified that if the rear license plate was illuminated by an operating tag light, it would be just as bright as the vehicle's tail lights. Barnes then reviewed parts of the videotape again and testified with regard to where he believes the tape indicates that the tag light was not functioning. Barnes reiterated that he stopped the vehicle for no tag light.

On recross-examination, Barnes testified that his testimony regarding where his headlights were directed, etc., was based on his review of the videotape, not specific recall from three years ago. However, Barnes testified that he could remember his "probable cause" for stopping the defendant's vehicle. He recalls that it was for having no tag light. Barnes acknowledged that a tag light, or license-plate light, is different from a tail light, in that they may have a different level of brightness. Moreover, the tail lights are red, as opposed to the tag light which is white.

Barnes then referred to the videotape at tape mark 01:03:05 a.m. and testified that at that point, he could not see inside the car due to the quality of the videotape, but that the license plate was visible because of illumination from his vehicle's head lights and blue lights.

In response to questions from the Court, Barnes testified that there is an "L" on the

5

videotape, which would indicate that the "extra lights" of Barnes' vehicle were on the whole time.

Barnes testified that this is an error on the videotape, because the flashing blue lights were not on

the entire time he was behind the defendant's vehicle. Barnes testified that one must look at the

videotape to see when the flashing blue lights became activated, and that one cannot rely on the "L"

on the videotape.

## II. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures.

U.S. Const. amend IV. The defendant argues that his rights under the Fourth Amendment were

violated because the officer lacked probable cause to stop his car. The defendant also attributes a

number of other constitutional violations to the stop based upon the claimed invalidity of the local

ordinance requiring that rear license plates be illuminated. The Court will address each of these

contentions in turn.

## A. Constitutionality of Stop

The defendant argues that the officer lacked probable cause to stop him for violating the local

ordinance because his rear license-plate lamp was properly illuminated on January 2, 2002. He

points to the videotape [Ex. 1] as evidence that his license-plate lamp was working. The defendant

contends that the videotape contradicts the officer's testimony that he had probable cause to stop the

defendant for a traffic violation.

If an "officer has probable cause to believe that a traffic violation has occurred or was

occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." United

6

States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993), cert. denied, 513 U.S. 828 (1994).  Whether a

traffic stop is an unreasonable seizure in violation of the Fourth Amendment is assessed, like other

alleged Fourth Amendment violations, by objectively evaluating the officer's conduct in light of the

surrounding circumstances known to the officer.  Id. at 388.  Probable cause is "reasonable grounds

for belief supported by less than prima facie proof but more than mere suspicion," United States v.

Bennett, 905 F.2d 931, 934 (6th Cir. 1990).  In other words, probable cause means a substantial

chance or likelihood of criminal conduct.  Ferguson, 8 F.3d at 392 (citing Illinois v. Gates, 462 U.S.

213, 244 n.13 (1983)).  If a traffic stop is properly supported by probable cause, "it is irrelevant what

else the officer knew or suspected about the traffic violator at the time of the stop."  Id. at 391.  The

Sixth Circuit has stated that probable cause to believe that a traffic violation has occurred permits

a stop for that violation, "no matter how slight, even if the officer's real purpose was a hope that

narcotics or other contraband would be found as a result of the stop."  United States v. Mesa, 62 F.3d

159, 162 (6th Cir. 1995).

     In the present case, Barnes testified that he was patrolling in the Burlington community when

he pulled behind the defendant's car.  He testified that he stopped the defendant because the

defendant's car did not have a rear tag light illuminating the license plate.  He testified that

Knoxville City Code Ordinance 17-379(c)[1] required that the defendant's license plate be illuminated

---

     [1]Knoxville City Code § 17-379(c) provides that "[e]ach lamp and stoplight required in
this section shall be in good condition and operational."  Knoxville City Code § 17-379(b)(4)
requires that

          No person shall operate a motor vehicle on the public streets of the
          city or property owned by or leased to the city's community
          development corporation unless such vehicle is equipped with an
          operating lamp or lamps so constructed and placed as to illuminate
          with a white light the rear registration plate and render it clearly

and visible from fifty feet. He testified that the defendant was traveling on a city street and that he specifically recalls his basis for stopping the defendant was the lack of a license-plate light. He testified that his headlights illuminated the defendant's license tag on the videotape.

The defendant argues that the videotape shows that his license-plate lamp was working on the night in question. He points to a specific portion of the videotape, when his car starts around a curve. He contends that at a certain point, his car is at too much of an angle for the cruiser's headlights to illuminate it, yet the license plate is still visible and is illuminated. Thus, he contends that the videotape rebuts Barnes' testimony about probable cause for the stop.

The Court has watched the videotape repeatedly, including advancing it through certain relevant portions frame-by-frame, and concludes that it is impossible to tell from the videotape whether the defendant's license-plate lamp was working. The Court agrees that Barnes' headlights are illuminating the defendant's license plate for the bulk of the footage. The Court cannot tell when the license plate moves beyond the reach of Barnes' headlights as the defendant's car moves through the curve. Moreover, the Court notes that there is a street light across the street from the defendant's car as it proceeds around the curve. The Court cannot rule out the light from the streetlight reflecting on the defendant's license plate as the rear of the car moves around the curve. Accordingly, the Court finds that the videotape is inconclusive regarding whether the defendant's license-plate lamp was functioning–it does not prove that it was working as the defendant asserts, nor does it prove that it was not functioning as the government contends.

---

legible from fifty (50) feet to the rear. Any such lamp or lamps shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted. This subsection shall not apply to any motor vehicle assembled or manufactured prior to January 1, 1968.

8

Aside from the videotape, the remaining evidence of probable cause is Barnes' testimony about his observations while following the defendant on January 2, 2002, and that he stopped the defendant for violating local ordinance 17-379(c), because the defendant's car did not have an illuminated license plate. Barnes testified that he specifically recalls this being his basis for stopping the defendant. With regard to the events of that evening, Barnes admitted on cross-examination that because it had been over three years since he stopped the defendant, his testimony on details such as where his headlights were shining at a given point was based upon his review of the videotape. In contrast, he said that he could specifically remember his "probable cause" because that was the reason he stopped the defendant.

The Court finds that the January 2, 2002 Affidavit of Complaint [Ex. 2] corroborates Barnes' testimony. The affidavit states:

> The defendant committed the offense of Traffic Offense: Unlawful Operation of Motor Vehicle Without Proper Lights, in violation of TCA section 55-9-402. The defendant was arrested for possession of a firearm and driving on a revoked license. The defendant was written a city citation for no tag light. The defendant refused to sign the citation. This incident occurred in Knoxville, Knox County, Tennessee on Wednesday, January 02, 2002 at about 01:00.[2]

Thus, the affidavit refers to the "no tag light" citation, the underlying facts of which Barnes testified were his basis for stopping the defendant.

The defendant challenges the Affidavit of Complaint by arguing that it charges him with a violation of Tenn. Code Ann. § 55-9-402, which does not require a rear license-plate lamp. Barnes explained in his testimony that the judicial commissioner provided this citation, which Barnes believed was the state charge "parallel" to city ordinance 17-379(c). Barnes testified that he chose

---

[2]The Court notes that the original language appears in all capital letters.

9

to charge the defendant with violations of state law rather than giving him city citations because the defendant had refused to sign the citations he filled out. He stated that if a person does not sign a citation, the individual can not be held accountable for the court date. Thus, Barnes destroyed the citations and pursued state charges in this case.

The Court does not find the erroneous citation to Tenn. Code Ann. § 55-9-402 to detract from Barnes' probable cause to stop the defendant for a violation of the Knoxville ordinance. See United States v. Ramirez, 115 F. Supp. 2d 918, 923 (W.D. Tenn. 2000) (holding that the officer's mistake about the state statute on tinted windows being identical to the Memphis ordinance did not affect his probable cause to stop the defendant for a violation of the ordinance). The Court also finds that Barnes' mistake about the state statute being parallel to the ordinance does not diminish the credibility of Barnes' testimony about why he stopped the defendant. The Court finds Barnes to be a credible witness and does not find that the inconclusive videotape contradicts his testimony. Accordingly, the Court finds that Barnes had probable cause to believe that the defendant was committing a traffic violation at the time of the stop.

The defendant argues that Barnes' subjective, good faith belief that the license-plate lamp was not operating cannot provide probable cause for the stop when the light was working. In this respect, he contends that the Court may not enter into an analysis of what Barnes was thinking as he pulled the defendant over but, instead, is bound to consider only whether an objectively reasonable officer would have had probable cause to make the stop. He asserts that in light of the videotape's proof that the light was working, the government has failed to carry its burden of proof on probable cause.

The government counters that even if Barnes were mistaken about whether the lamp was

10

working, it does not invalidate the stop. It maintains that if the lamp appeared to Barnes not to be functioning, it was proper for Barnes to stop the defendant and investigate his compliance with the traffic ordinances. The government contends that as long as the Court determines that based upon the totality of the circumstances, Barnes had a particularized, objective, and credible basis for believing the light was not working, then Barnes' good-faith mistake of fact does not render the stop invalid. See United States v. Miguel, 368 F.3d 1150, 1154 (9th Cir. 2004).

The Court agrees that a finding of probable cause for a traffic stop must be based upon an objective evaluation of the officer's conduct in light of the surrounding circumstances as they are known to the officer. Ferguson, 8 F.3d at 388. Considering the totality of the circumstances, Barnes saw the defendant driving on a city street without his rear license plate illuminated. The Court finds that a reasonable officer in those circumstances would be justified in believing that the defendant had committed a traffic violation with respect to city ordinance 17-379(c). The Court disagrees that the videotape shows that Barnes was mistaken in concluding that the defendant's rear license plate was not illuminated. Therefore, the Court's finding of probable cause is based upon an objective evaluation of the circumstances. The Court recommends that the defendant's Motion to Suppress Evidence [Doc. 13] should be denied.

Although not expressly raised outside of the issues surrounding the stop, the Court also finds that the frisk of the defendant and the search of his car were proper. After the defendant was stopped for a traffic violation, Barnes could ask him to step out of his car and for a driver's license without running afoul of the Fourth Amendment. "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."

11

Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977); United States v. Burton, 334 F.3d 514, 519 (6th Cir. 2003). Pursuant to a valid traffic stop, an officer may ask the driver for his or her driver's license. See United States v. Lewis, No. 02-20300, 2003 WL 124017, *3 (6th Cir. Jan. 14, 2003) (citing United States v. Shabazz, 993 F.2d 431, 437 (5th Cir. 1993) (holding "in a valid traffic stop, an officer can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation)); see also United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993) (holding that "[d]uring a routine traffic stop, the detaining officer may request a driver's license and vehicle registration").

Upon receiving the defendant's driver's license that stated "ID only. DUI offender," Barnes knew that the defendant had been driving on a revoked license and, thus, had probable cause to arrest him for that offense. Barnes could search the defendant incident to that arrest and, thus, properly discovered the handgun magazine in his coat pocket. See Chimel v. California, 395 U.S. 752, 762-63 (1969). Barnes could also search the defendant's car incident to his arrest. See New York v. Belton, 453 U.S. 454, 460 (1981) (holding that an officer may conduct a warrantless search the passenger compartment of a car incident to an occupant's custodial arrest). Such a search incident to an arrest must be "substantially contemporaneous with the arrest." Stoner v. California, 376 U.S. 483, 486 (1964); United States v. Barnett, 407 F.2d 1114, 1119-20 (6th Cir. 1969). In the present case, the videotape reveals that Barnes searched the car within minutes of arresting the defendant. Furthermore, the fact that the arrestee is no longer in a position to reach into the car at the time of the search does not affect the propriety of the search. See United States v. White, 871 F.2d 41, 44 (6th Cir. 1989) (analyzing situation in which defendant handcuffed and detained in patrol car at time officer searched his car incident to his arrest), see also Thornton v. United States,

541 U.S. 615, 124 S. Ct. 2127, 2132 (2004) (approving search of a car incident to arrest when the defendant had already left the car before he was stopped by the officer). Accordingly, the search of the defendant's car did not violate the Fourth Amendment.

Also, aside from arguing that it must be suppressed as the fruit of an illegal stop, the defendant makes no separate argument about the admissibility of his statement to Barnes about the location of the gun. Barnes testified that once he discovered the magazine, he asked the defendant where the gun was located for officer safety. He stated that the assisting officers were approaching the vehicle, which contained two other occupants. The government contends that no exclusionary remedy is warranted if Barnes did not provide <u>Miranda</u> warnings before asking about the gun because of the public safety exception.

"It is well settled that warrantless interrogation is permitted when officers have a reasonable belief based on articulable facts that they are in danger." <u>United States v. Talley</u>, 275 F.3d 560, 563 (6th Cir. 2001) (relying upon <u>New York v. Quarles</u>, 467 U.S. 649 (1984)). In <u>Talley</u>, the court held that the officer was justified in asking about the location of the gun prior to giving a <u>Miranda</u> warning upon seeing a magazine in plain view and because he was reasonably concerned that other persons were concealed in the house. <u>Id.</u> at 564. Likewise, in the present case, a reasonable officer would have been concerned for the safety of the assisting officers approaching the car, which contained two occupants, upon discovering the handgun magazine in the defendant's pocket. Accordingly, the Court also finds that the defendant's statement to Barnes about the location of the gun should not be excluded despite the absence of the <u>Miranda</u> warnings.

### B. Constitutionality of Ordinance

The defendant also contends that any evidence stemming from the stop of his car on January 2, 2002, must be suppressed because the Knoxville City Ordinance upon which the officer relied is unconstitutional. He argues that the ordinance requiring his car to be equipped with a rear license-plate light (1) violates equal protection because it is not rationally related to a legitimate government objective, (2) violates the due process requirement of "fair warning," and (3) deprives him of his substantive right to interstate and intrastate travel. The government argues that the Court does not have to reach the constitutionality of the ordinance because the officer was justified in relying on an ordinance, which had not been invalidated prior to the stop and which was not "grossly and flagrantly unconstitutional."

### 1. Stop Pursuant to a Presumptively Valid Ordinance

The Supreme Court has addressed the question of the validity of a stop for a violation of a local ordinance, which a court subsequently finds to be unconstitutional. See Michigan v. DeFillippo, 443 U.S. 31, 33 (1979). In Defillippo, the officer arrested the defendant for violating a local ordinance requiring persons to identify themselves to the police. Id. The defendant was searched incident to his arrest, and the officer found marijuana and phencyclidine on his person. Id. at 34. The local ordinance was subsequently held to be unconstitutionally vague, and the defendant's arrest and search were invalidated. Id. On appeal, the Supreme Court held that the officer had probable cause to arrest for a violation of the local ordinance, which was presumptively valid as no court had ruled upon its constitutionality at that time. Id. at 37. It reasoned that the officer "should not have been required to anticipate that a court would later hold the ordinance unconstitutional." Id. at 38. "Police are charged to enforce laws until and unless they are declared

14

unconstitutional," and the legislative body's passing of a law "forecloses speculation by enforcement officers concerning its constitutionality." Id. The Court recognized a "possible exception" for "a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." Id. Accordingly, the Court concluded that the evidence found in a search incident to the defendant's arrest should not have been suppressed. Id. at 39-40.

Applying this reasoning to the present case, as long as Barnes had probable cause to stop the defendant for the violation of the ordinance (which question the Court has answered in the affirmative above), the stop is valid without regard to the constitutionality of the ordinance if (1) the ordinance was not ruled unconstitutional before January 2, 2002, and (2) the ordinance is not so "grossly and flagrantly unconstitutional" that any reasonable person would know it. The Court has located no case that even mentions Knoxville City Code § 17-379, much less deems it unconstitutional. Moreover, Sixth Circuit cases analyzing stops for violation of a similar Ohio law have not discussed the constitutionality of requiring license-plate lights. See, e.g., United States v. Cooper, No. 00-3681, 2002 WL 1033724, **6 (6th Cir. May 21, 2002) (stop of car in Ohio for "lack of a light illuminating the license plate"); United States v. Neller, Nos. 97-3630, 97-3631, 97-4051, 97-4053, 99-3253, 2000 WL 1234330, **4 (6th Cir. Aug. 25, 2000) (stop of car in Ohio matching a description and having no license-plate light).

Moreover, nothing about the ordinance is grossly or flagrantly unconstitutional. In fact, numerous states, including neighboring Georgia, Ga. Code Ann. § 40-8-23 (d), and Kentucky, Ky. Rev. Stat. Ann. § 186.170, require illumination of the rear license plate. Thus, the Court finds that Barnes had no reason to question the constitutionality of the ordinance. Without reaching the question of the constitutionality of the statute, the Court concludes that the stop was valid and the

evidence should not be suppressed. Accordingly, the Court recommends that the defendant's suppression motion be denied.

## 2. *Equal Protection Violation*

In the event that the District Court disagrees with this Court's finding that the ordinance in question is not flagrantly unconstitutional, the Court will endeavor to address briefly each of the defendant's arguments for the unconstitutionality of the ordinance. First, the defendant alleges a violation of the equal protection of law because the local ordinance requiring license plates to be illuminated has no rational basis in light of the fact that a Tennessee statute, Tenn. Code Ann. § 55-4-110, governs the legibility and placement of license plates. The government contends that with a few exceptions that do not apply here, state law expressly permits municipalities to regulate the operation of vehicles in ways that do not conflict with state law. See Tenn. Code Ann. § 55-10-307.

Tennessee law requires that

(a) The registration plate issued for passenger motor vehicles shall be attached on the rear of the vehicle. . . . .

(b) Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so to prevent the plate from swinging and at a height of not less than twelve inches (12") from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible. No tinted materials may be placed over a license plate even if the information upon such license plate is not concealed.

Tenn. Code Ann. § 55-4-110. Tennessee law does not require license-plate light on single vehicles such as cars as opposed to vehicles at the end of a train of vehicles. See United States v. McKissack, 76 F. Supp. 2d 836, 838 (M.D. Tenn. 1999). As noted by the government, Tennessee law also permits an incorporated municipality to enact ordinances providing "additional regulations for the

16

operation of vehicles within the municipality, which shall not be in conflict with the provisions" of certain enumerated statutes regulating motor vehicles. <u>See</u> Tenn. Code Ann. § 55-10-307(a). Alternatively, the statute prohibits municipalities from legislating in the areas of DUI, leaving the scene of an accident, driving on a revoked or suspended license, and drag racing. <u>See</u> Tenn. Code Ann. § 55-10-307(b).

Knoxville City Code § 17-379(b)(4) and (c) does not fall within the prohibited areas in section 55-10-307(b). Moreover, the Court finds that the ordinance's requirement that the rear license plate be illuminated by a white light such that it is visible from fifty feet does not conflict with section 55-4-110(b)'s requirement that license plates be "clearly visible." Accordingly, the Court finds that the ordinance is not preempted by the state statute and is rationally related to a legitimate government objective of regulating traffic on city streets. <u>See</u> <u>State v. Booher</u>, 978 S.W.2d 953, 956 (holding that "[s]tate and local governments possess an inherent power, i.e. police power, to enact reasonable legislation for the health, safety, welfare, morals, or convenience of the public").

*3. Due Process "Fair Warning" Violation*

Relying upon <u>United States v. Lanier</u>, 520 U.S. 259 (1999), the defendant contends that Knoxville City Code § 17-379 violates his due process right to "fair warning," in that it holds him criminally responsible for conduct that he could not reasonably understand to be proscribed. In this respect, he asserts that a driver from another county or state would not know of the requirement that his or her license plate be illuminated, especially in the absence of a similar requirement under state law. The government argues that the defendant is erroneously equating the fair warning doctrine

17

with ignorance of the law, which is not a defense to criminal prosecution.

The due process doctrine of fair warning provides that no one "'shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" Id. at 266 (quoting Bouie v. City of Columbia, 378 U.S. 347, 351 (1964) (citation to quoted case omitted)). The high court explained that the fair warning doctrine can manifest itself in three ways: (1) a statute so vague that persons of ordinary intelligence must guess what it means and disagree over its application cannot be enforced, (2) ambiguous criminal statutes must be construed with leniency to apply "only to conduct clearly covered," and (3) "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." Id. "In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." Id.

In the present case, there is no vagueness or ambiguity to the ordinance in question. It provides that a motor vehicle operated on a city street must have a white light illuminating the rear license plate so that the license plate is clearly visible from fifty feet away. Moreover, the defendant's alleged conduct–driving on a city street without a license-plate lamp–is fairly within the scope of the plain meaning of the ordinance. The defendant's argument is that he was unaware of the law altogether avails him no relief. See Cheek v. United States, 498 U.S. 192, 199 (1991) (holding that the "general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system").


*3. Violation of the Right to Travel*

Finally, the defendant summarily contends that Knoxville City Code § 17-379 serves to deprive travelers of their substantive right to travel within and outside of Tennessee, because the state legislature did not find a rear license-plate light necessary. Citing to several district court cases, the government responds that a police officer's enforcement of a valid traffic law does not infringe upon the right to travel. See, e.g., United States v. Lindsey, No. 03-40011-01-RDR, 2004 WL 1846123, *5 (D. Kan. May 6, 2004) (holding with regard to a selective enforcement claim, that a stop for a traffic violation does not violate the out-of-state driver's right to travel); United States v. Hare, 308 F. Supp. 2d 955, 1001 (D. Neb 2004) (holding that a "police officer's enforcement of a valid traffic law does not violate the motorist's right to travel" even if the officer focuses on out-of-state license plates in stopping motorists for traffic violations); West v. Duncan, 179 F. Supp. 2d 794, 803 n.5 (N.D. Ohio 2001) (noting that a "police officer's enforcement of a valid traffic law is not a violation of the plaintiffs' right to travel"); United States ex rel Verdone v. Circuit Court for Taylor County, 851 F. Supp. 345, 350 (W.D. Wis. 1993) (holding the fact that "plaintiff is subject to Wisconsin's traffic laws [as well as local ordinances] does not mean that his right to travel has been violated; the right to travel is not a right to travel in any manner one wants, free of state regulation").

"The Supreme Court has recognized a right to interstate travel under certain circumstances, and the Sixth Circuit has recognized a right to intrastate travel under certain circumstances." League of United Latin American Citizens (LULAC) v. Bredesen, No. 3:04-0613, 2004 WL 3048724, *4 (M.D. Tenn. Sept. 28, 2004) (analyzing the right of illegal and non-resident aliens to obtain a driver's license) (citing Saenz v. Roe, 526 U.S. 489, 500 (1999) and Johnson v. City of Cincinnati, 310 F.3d 484, 496 (6th Cir. 2002)). An alleged violation of the right to travel generally calls for an

19

equal protection analysis. <u>Zobel v. Williams</u>, 457 U.S. 55, 60 n.6 (1982). The government may not enact a provision that "too broadly and indiscriminately restricts the right to travel." <u>Aptheker v. Secretary of State</u>, 378 U.S. 500, 505 (1964) (analyzing statute making it a felony for a member of the Communist party to obtain or use a passport). On the other hand, the "right to travel is not absolute." <u>Id.</u> at 526 (J. Clark, dissenting). Because of the "peculiarly local nature" of safety, states, and by extension localities, are permitted to regulate the operation of vehicles on their roads. <u>See</u> <u>Bibb v. Navajo Freight Lines, Inc.</u>, 359 U.S. 520, 523 (1959).

In the present case, the government contends that ordinance 17-379 does not violate equal protection because it applies equally to all motorists on the Knoxville city streets. The defendant's argument that the ordinance violates his right to travel is flawed because the ordinance's requirement that he have a license-plate lamp does not prevent *him* or any other resident of Knoxville from traveling in other counties or other states, which might not require one. The defendant has cited to no law from another county or state prohibiting a rear license-plate lamp. In fact, as discussed above, many other states such as our neighboring states of Georgia and Kentucky require a rear license-plate lamp on cars. <u>See</u> Ga. Code Ann. § 40-8-23 (d); Ky. Rev. Stat. Ann. § 186.170. Accordingly, the fact that the local ordinance requires more safety equipment than some other counties or states does not violate the defendant's right to travel.

The Court contrasts this case with that of <u>United States v. Ramirez</u>, 115 F. Supp. 2d 918 (W.D. Tenn. 2000). In <u>Ramirez</u>, a North Carolina driver was stopped in Memphis for violating a local ordinance prohibiting a certain degree of tint on windows. <u>Id.</u> at 920-23. The court found that the Tennessee statute on tinted windows, which permitted a greater degree of tinting and applies only to vehicles registered in Tennessee, preempted the Memphis ordinance. <u>Id.</u> at 923. The court

also found that the Memphis ordinance appeared to violate the right to interstate travel because tinted  windows, which were legal in the state of the vehicle's registration (such as the North Carolina vehicle in that case), "may become unlawful merely by passing through the city of Memphis on a cross-country trip." Id. Nevertheless, the court ultimately declined to suppress the controlled substances found in the North Carolina vehicle because the officer had probable cause to stop the defendant for a violation of the ordinance and "the constitutional defect in this ordinance is not so glaring as to make an officer's reliance on the law objectively unreasonable." Id. at 924.

In the present case, there is no evidence that the defendant's Escort is registered in another state or county, which does not require rear license-plate lamps on cars.  In other words, the defendant is not among the class of people whose travels could be arguably disadvantaged by the Knoxville ordinance in question.  See Norton v. Ashcroft, 298 F.3d 547, 555 (6th Cir. 2002) (observing that with respect to constitutional claims–in that case First Amendment claims– "[o]rdinarily, a party does not have standing to assert the rights of third parties").  Moreover, this Court has already found that ordinance 17-379 is permitted by and consistent with Tennessee law. Accordingly, the Court finds that the defendant's right to travel is not infringed by the requirements of the Knoxville City ordinance.

After reviewing the defendant's arguments for the unconstitutionality of ordinance 17-379, the Court finds they are without merit and that they do not reveal that the ordinance is so "grossly and flagrantly unconstitutional" that a reasonable person could readily perceive their unconstitutional nature.  Accordingly, the Court recommends that the defendant's motion to suppress be denied on this basis as well.

### III. CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence [**Doc. 13**] and Amendment to Motion to Suppress Evidence [**Doc. 17**] be **DENIED**.[3]

Respectfully submitted,

_____s/ H. Bruce Guyton_____
United States Magistrate Judge

---

[3]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

22