UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| TOMMY LEE NORWOOD, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos.: | 3:04-CR-141-TAV-HBG-1 |
| | ) | | 3:16-cv-601-TAV |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## <u>MEMORANDUM OPINION</u>

Before the Court is Petitioner's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 68]. Petitioner bases his request for relief on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague [*Id.*]. The United States filed a response in opposition to relief on November 8, 2016 [Doc. 70]. Petitioner did not reply and the time for doing so has now passed. E.D. Tenn. L.R. 7.1, 7.2. For the reasons that follow, Petitioner's § 2255 motion [Doc. 68] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

In 2005, Petitioner pled guilty to possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) [Docs. 34–36]. Based on four prior Tennessee convictions—three for burglary and one for robbery, the United States Probation Office deemed Petitioner to be an armed career criminal subject to the ACCA's fifteen year mandatory minimum. In accordance with that designation, this Court sentenced Petitioner to 180 months' imprisonment [Doc. 43]. Petitioner appealed, but the Sixth Circuit affirmed his conviction and sentence [Doc. 51].

On November 16, 2007, Petitioner filed a motion to vacate, correct, or set aside his sentence, raising several grounds of ineffective assistance of counsel [Doc. 56]. This Court denied the requested relief on March 25, 2011 [Docs. 64, 65]. On November 6, 2016, the Sixth Circuit granted Petitioner leave to submit a successive collateral challenge based on the *Johnson* decision [Doc. 67], and transferred this Court the instant § 2255 motion [Doc. 68].

## II.    STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## III.    ANALYSIS

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The provision defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-

2

offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did not call into question the remainder of the ACCA's definition of violent felony—the use-of-physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015).

Three of the four offenses used to support Petitioner's armed career criminal enhancement were for third-degree burglary. At the time that the offenses were committed, Tennessee defined third-degree burglary as "breaking and entering into a business house, outhouse, or any other house of another, other than a dwelling house, with the intent to commit a felony,"[1] Tenn. Code Ann. § 39-3-404(a) (1982), and, in a separate subsection, provided enhanced penalties for "any person who, with intent to commit a crime, breaks and enters, either by day or by night, any building whether inhabited or not, and opens or attempts to open any

---

[1]     Tennessee revised its burglary statutes on November 1, 1989, as part of the State's comprehensive criminal code revision. *See, e.g.*, *State v. Langford*, 994 S.W. 2d 126, 127–28 (Tenn. 1999). The pre-1989 version of the Tennessee Code criminalized six types of burglary offenses: (1) first-degree burglary, Tenn. Code Ann. § 39-3-401 (1982); (2) breaking after entry, Tenn. Code Ann. § 39-3-402 (1982); (3) second-degree burglary, Tenn. Code Ann. § 39-3-403 (1982); (4) third-degree burglary, Tenn. Code Ann. § 39-3-404(a)(1) (1982); (5) safecracking, Tenn. Code Ann. § 39-3-404(b)(1) (1982); and (6) breaking into vehicles, Tenn. Code Ann. § 39-3-406 (1982). Tennessee law now prohibits only three types of burglary: (1) burglary, Tenn. Code Ann. § 39-14-402 (2016); (2) aggravated burglary, Tenn. Code Ann. § 39-14-403 (2016); and (3) especially aggravated burglary, Tenn. Code Ann. § 39-14-404 (2016).

The statute that proceeded Tennessee's pre-1989 third-degree burglary statute—codified under Tennessee Code Annotated § 39-904 and in effect when Petitioner committed his 1979 third-degree burglary offenses [PSR ¶¶ 44, 45]—contained identical language the provision in effect when he committed the 1989 offense [*Id.* ¶ 56]. Tenn. Code Ann. § 39-904 (1977).

vault, safe, or other secure place by any means," Tenn. Code Ann. 39-3-404(b) (1982); *see also Church v. State*, 333 S.W.2d 799, 806 (Tenn. 1960) (quoting the relevant provisions).

To determine whether Petitioner's offenses were properly categorized as predicate violent felonies under § 924(e), the Court needs to identify the precise crimes of conviction. *Descamps*, 133 S. Ct. at 2285.[2] To do so, the Court employs a "categorical approach," under which it looks "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted). If violation of the statute invariably involves the use, attempted use, or threatened use of violent force or falls within the generic definitions of burglary, arson, or extortion, then the conviction categorically qualifies as a violent felony and the courts' task is complete. It is only when the statute criminalizes conduct in excess of that covered by the use-of-physical-force and enumerated-offense clauses, that the Court must determine whether the statute is divisible or indivisible. A divisible statute is one that comprises multiple crimes, alternative sets of elements. *Id.* at 2281. An indivisible statute is one that contains a single crime, lone set of indivisible elements. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). When faced with a divisible statute, the Court resorts to the "modified categorical approach," i.e., consults "a limited class of documents, such as indictments and jury instructions, to determine which alternative [set

---

[2]     The Supreme Court clarified in *Descamps* how sentencing courts should identify a defendant's offense when the prior conviction involved the violation of a "divisible" statute— one which "comprises multiple, alternative versions of the same crime." 133 S. Ct. at 2284. Specifically, the Court explained that the sentencing court should employ a "modified categorical approach" and "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281. The decision made clear that "the job . . . of the modified approach [was only] to identify, from among several alternatives, the crime of conviction so that the court can" determine whether that variant of the offense qualified as a violent felony under the ACCA's definition of violent felony. *Id.* at 2285.

of elements] formed the basis of the defendant's prior conviction." *Id.* at 2281. Because the categorical and modified approaches are concerned with elements alone and not the "facts underlying [any particular] conviction," *Id.* at 2285, the Court is prohibited from using either approach to distinguish between alternative means for satisfying a single indivisible element. *Mathis*, 136 S. Ct. at 2253–54. Thus, it is important to distinguish between divisible provisions to which the modified approach can be applied and indivisible provisions to which it cannot.

To determine whether a statutory list of locations constitutes alternative elements or alternative means of satisfying a single indivisible crime, courts must consider: (1) the text of the statute; (2) any state court decisions interpreting that statute; and (3) where "state law fails to provide clear answers, . . . the record of a prior conviction," i.e., charging documents and jury instructions, for the "limited purpose" of distinguishing between means and elements. *Id.* at 2256–57. With regard to the third factor, the Supreme Court has provided the following:

> Suppose, for example, that one count of an indictment and correlative jury instructions . . . use a single umbrella term like "premises" . . . the record would then reveal what the prosecutor has to (and does not have to) demonstrate to prevail. Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statue contains a list of elements, each one of which goes toward a separate crime.

*Id.* at 2257. Applying this analysis to Tennessee's pre-1989 third-degree burglary statutes leads the Court to conclude that both Tennessee Code Annotated §§ 39-3-404 (1982) and 39-904 (1977) are over broad, i.e., criminalize more conduct "than [is covered by] the generic definition in *Taylor*." *United States v. Bureau*, 52 F.3d 584, 593 n. 6 (6th Cir. 1995); *see also United States v. Caruthers*, 458 F.3d 459, 476 (6th Cir. 2006) (noting that the pre-1989 third-degree burglary statue criminalized unlawful entry into coin receptacles and the like). Because subdivisions (a) and (b) constitute unrelated methods of committing third-degree burglary, the Court finds that

5

Tennessee Code Annotated §§ 39-3-404 (1982) and 39-904 (1977) encompass alternative sets of elements, i.e., are divisible. *See Englett v. State*, No. 01-C-019103CC00086, 1991 WL 255894, at *2 (Tenn. Crim. App. Dec. 5, 1991) (describing third-degree burglary and safecracking as two separate offenses). Because the provisions are divisible, the modified approach can be used to determine whether Petitioner's variants of third-degree burglary qualify as violent felonies.

Review of Petitioner's PSR conclusively demonstrates that all three of his third-degree burglary convictions involved breaking and entering into residences or business, not "vault[s], safe[s], or other secure place[s]" [PSR ¶¶ 44 (noting the first 1979 conviction stemmed from burglary of "Howard High School"), 45 (noting the second 1979 conviction involved another burglary of "Howard High School"), 56 (noting that the 1989 conviction resulted from burglary of "Ridgedale Pawn Shop")].[3] Because the variants of third-degree burglary underlying Petitioner's convictions align with the definition of generic burglary, all three convictions were properly categorized as predicate offenses for purposes of ACCA designation.

In addition to the third-degree burglaries, binding Sixth Circuit precedent dictates that Petitioner's robbery conviction qualifies as an ACCA predicate under the use-of-physical-force clause. *See, e.g.*, *United States v. Mitchell*, 743 F.3d 1054, 1058–60 (6th Cir. 2014) (holding that all forms of Tennessee robbery categorically qualify as violent felonies under the ACCA use-of-physical-force clause). Because all four prior offenses qualify as ACCA predicate offenses independent of the *Johnson* decision, Petitioner's collateral challenge fails as a matter of law.

---

[3] Petitioner does not contest the accuracy of the information contained in his presentence report, but only the propriety of the Court's decision to use the predicate offenses listed therein as grounds for ACCA enhancement. Further, Petitioner has not met his burden on collateral review by supplementing the record with evidence that he was convicted of non-generic variants of pre-1989 third-degree burglary or identifying any other reason to doubt the accuracy of the representations contained in his PSR.

6

**IV. CONCLUSION**

For the reasons discussed, Petitioner's § 2255 motion [Doc. 68] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE